TITCHE v. HILLER, Appellant

(Jan. 31, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. Louisiana Digest—Injunction—Par. 84.

An injunction cannot be dissolved on rule on the ground that the allegations of fact as to the merits are not true.

2. Louisiana Digest—Injunction—Par. 97.

Attorney's fees cannot be allowed to defendant in injunction when it is dissolved after trial on the merits.

3. Louisiana Digest—Attorneys—Par. 60.

There is no law and no absolute rule fixing the value of attorney's fees.

4. Louisiana Digest—Attorneys—Par. 60.

Courts will be guided but not governed by the opinion of attorneys concerning the value of professional services; they will themselves fix that value.

5. Louisiana Digest—Attorneys—Par. 60.

There is an esprit de corps among men of the same profession which prompts them to value their services at the highest figure.

6. Louisiana Digest—Attorneys—Par. 60.

Courts are guided by three elements in estimating the value of services rendered by attorneys: their quality, their quantity, and the value of the subject matter concerning which the services were rendered.

7. Louisiana Digest—Attorneys—Par. 60.

The value of attorney's fees is not tested by success or failure.

Appeal from Civil District Court. Hon. Wm. H. Byrnes, Jr., Judge.

Action by Bernard Titche against A. J. Hiller.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Jos. H. Brewer, A. J. Frymire, T. J. Bartlett, of New Orleans, attorneys for plaintiff, appellee.

Geo. J. Untereiner, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. This is a suit for attorney's fees.

The facts of the case are as follows:

One June 2, 1920, A. J. Hiller sold to H. P. Campbell certain lands situated in the County of Pontotoe, Mississippi, said to contain 160 acres; the price of sale was $4168, which was paid as follows: By assuming a mortgage of $1000 upon said lands and by the transfer and delivery by Campbell to Hiller of a promissory note of $3168 made by N. T. and W. D. Willis.

On June 21, 1920, Campbell filed a suit against Hiller for the rescission of said sale and for the return of the note of $3168. In his petition he alleged that he had purchased the lands without inspecting them, and upon the representations made to him by Hiller and his agents that the lands were situated within one mile from Pontotoe and that they were all level and under cultivation; that he visited the lands and has discovered that the representations made to him by Hiller were false and fraudulent to the knowledge of Hiller; that the truth is that said lands are situated about eleven miles from Pontotoe, and are hilly, and only twenty acres thereof are under cultivation, and are worth only a small part of the price which they would have been worth had they accorded with the representa-

tions; that the sale made by Hiller to Campbell is therefore null for fraud on the part of Hiller and error on the part of Campbell, and Campbell desired to have the sale rescinded on those grounds, to be relieved from the assumption of the mortgage of $1000, and to have returned to him the note of $3168, and that Hiller be enjoined from negotiating said note.

The injunction was issued as prayed for on a bond of $500.

In a supplemental petition Campbell alleged that although the price of sale in the act of sale was stated to be ten dollars, the truth was that the price was as above stated; that in addition to the false representations hereinabove mentioned, Hiller represented to Campbell that there was a large crop of growing alfalfa upon the lands and that they were entirely fenced in; while the truth was there was no alfalfa at all and very little fencing.

Hiller employed Bernard Titche, the plaintiff herein, attorney at law, to defend the suit.

Titche took a rule to dissolve the injunction upon two grounds.

1st. No cause for the writ;

2nd. Insufficiency of the bond in amount.

The rule was dismissed.

Titche excepted to the petition on the ground of vagueness and that it disclosed no cause of action, and that the supplemental petition charged the substance of the demand.

Titche filed a four-page brief "in support of the exception of no cause of action", and quoted Article 1847 of the Civil Code, and State vs. Dozier, 33 La. Ann. 1364;

39 S. E. 593, 2 Day (Conn.) qwi, 136, and 13 Wall. 379.

The exceptions were overruled.

Hiller then filed an answer. He admitted the sale to Campbell, and the price set forth in the petition, but denied all the other allegations of the petition and supplemental petition.

The case went to trial upon those issues.

As stated by Campbell's attorney, "the main issue in the case is, therefore, whether or not the representations were made as alleged, and if so, what is their legal effect upon the rights of the parties". The testimony in the case as to the representations which the plaintiff claims induced him to purchase the land, and with which the land concededly did not comply, is directly conflicting, and it will be necessary for the court to determine which side of this conflicting testimony it will accept as true, and having thus found the facts, to make a proper application of the law thereto. It is conceded that the plaintiff and the defendant never met directly either in the negotiations leading up to the sale or in the consummation of same, communications being through plaintiff's (Campbell's) brother as an intermediary.

The plaintiff's, Campbell's, testimony consisted of the deposition of himself; of his brother, B. J. Campbell, in the real estate business in Memphis, operating under the name of B. J. Campbell and Company; of J. B. Hyde, manager of the Farm Loan Department of B. J. Campbell and Company, and of J. Wiley Moore, a bank cashier in Pontotoe County, Mississippi.

The defendant's (Hiller) evidence consisted of the testimony of himself, which

was given in open court, and of the deposition of a Memphis lawyer named Loch.

Mr. Titche wrote a two-page brief upon the fact. He argued the rule to dissolve the exception and the merits.

The questions of law was the same in all three.

There was judgment in favor of Hiller rejecting Campbell's demand.

In the suit under consideration plaintiff, Titche, sues the defendant, Hiller, for five hundred dollars, subject to a credit of one hundred dollars received as a retainer, as a fee for services by him rendered to Hiller in the above suit of Campbell vs. Hiller.

The defendant Hiller for answer, admitted the employment of Hiller, as stated in his petition, but denied any indebtedness to him for three reasons.

1st. That he was compelled to employ counsel to defend himself in the suit of Campbell against himself to whom he owed attorney's fees, and that he was damaged in the sum of $310 as interest on the mortgage notes enjoined, both of which Titche failed to claim against Campbell who was an absentee;

2nd. That the plaintiff, Titche, agreed upon a fee of $100 for all services to be rendered by him;

3rd. That the fee claimed is excessive.

Hiller claimed $410 in reconvention.

There was judgment in favor of plaintiff for $400 rejecting the reconventional demand.

Hiller has appealed.

1st. The injuncton could not have been dissolved on rule as the validity of the in-

junction depended upon facts, the truth of which could be denied only upon the merits. 4 La. Dig. S. 82; New Orleans Water Wks. Co. vs. Joseph Oser & Co., 36 La. Ann. 918.

Attorney's fees cannot be allowed to defendant in injunction when it is dissolved after trial on the merits. 4 La. Dig. S. 97, p. 45; 8 Orl. App. 342 (344).

Only those fees are allowed which have been rendered to set aside the injunction proper. Aiken vs. Leathers, 40 La. Ann. 23, 3 South. 357; Lemeunier vs. McClearley, 41 La. Ann. 412, 6 South. 338; Levert vs. Sharpe, 52 La. Ann. 602, 27 South. 64.

The defendant has not shown that he has suffered $310 damages or any damages at all.

2nd. It is not proven that Titche agreed to defend the case for $100. Hiller and his mother-in-law testify to that. They may have mistaken the amount of the retainer for the entire amount of the fee. Titche denies it. One hundred dollars was not in proportion to the value of the services and this circumstance and the opinion of the trial judge lead us to believe the defendant was in error.

3rd. Plaintiff and the attorney of Campbell place a value of $500 upon the services rendered by plaintiff.

There is no law and no absolute rule fixing the value of attorney's fees. Every case rests upon its own facts. 6 Orl. App. 225.

In the case of Randolph vs. Carroll, 27 La. Ann. 467, the court said:

"It is a rule long settled by this court that it will not be implicity governed in regard to questions relating to the value of professional services rendered to their clients by attorneys at law, by the opinion

of legal men taken in evidence, but will be guided by a conscientious estimate of the value of the services performed, and will of itself, fix the 'amount' without reference to opinions of witnesses." Castille vs. Caffery Central Refinery & Ry. Co., 48 La. Ann. 322, 19 South. 332; State vs. Perkins, 49 La. Ann. 312, 21 South. 839; Cullom vs. Mack, 21 La. Ann. 687; Succession of Wells, 24 La. Ann. 163; Succession of Jackson, 30 La. Ann. 463; Succession of Rabasse, 51 La. Ann. 604, 25 South. 326; Dinkelspiel & Hart vs. Pons, 119 La. 236, 43 South. 1018.

The reason of the rule is "that there is an 'esprit de corps' prevailing among men of the same profession which prompts them to value their services at the highest possible rate". Central Glass Co. vs. Ins. Co., 13 Orl. App. 16 (23), and authorities quoted there.

The very learned opinion of Judge Fred D. King in State ex rel. vs. Bank, 49 A. 1060, 22 South. 207, was adopted by the Supreme Court. He said on page 1075:

"* * * and said Judge Eustis in the same case State vs. Mex. Gulf Ry. Co., 3 La. Ann. 518: 'The responsibility of determining the amount of fees for professional services is a matter of great delicacy, and under the rules on which our predecessors and the profession have acted for years, a court in fixing them, must be guided by a conscientious estimate of their value.' State vs. Union Bank, 4 La. Ann. 503.

"The courts presided over by Judge Martin and Judge Eustis adopted the following rules: 'The measure of the reward of professional services is the exercise of legal knowledge, the responsibility incurred, and the labor bestowed'."

The court adopted this language in Dinkelspiel & Hart vs. Pons, 119 La. 236, 43 South. 1018. See also 2 Orl. App. 209; In re. Succession of Labauve, 34 La. Ann. 1188.

In Breaux et al. vs. Trancke, 30 La. Ann. 336, the court said:

"Two factors enter into the calculation of fees for services such as those rendered by the plaintiffs. One is the extent and kind of service and the labor incident to its rendition, and the other is the ability of the party who is liable to pay."

This opinion was adopted in Interdiction of Leech, 45 La. Ann. 195, 12 South. 126.

These cases were affirmed in Lea vs. Hart, 47 La. Ann. 1125, 17 South. 593. The court said:

"Much the same rule was stated in Succession of Linton, 31 A. 130, and in Succession of Mager, 12 Rob. 413. It was said that 'the labor of an attorney * * * ought to be rewarded according to its nature, extent and degree of skill and care it demands'."

In State vs. Union Bank, 4 La. Ann. 503, the court said:

"Counsel fees are in point of fact from their very nature, honorary, and not susceptible of an accurate appreciation in money."

In the Succession of Percival, 138 La. 543, 70 South. 505, the court said.

"In fixing the fees of attorneys employed by executors, administrators, and other representatives of successions, the exertion of legal knowledge, the responsibility incurred, the labor bestowed, and the amount involved, constitute the principal factors to be considered." 4 Cyc. 994.

In the Succession of Roth, 12 Orl. App. 168, this court, in line with the above authorities, said:

"Courts are guided by three elements in estimating the value of services rendered by attorneys: their quality, their quantity, and the value of the subject matter concerning which the services were rendered."

1st. In the case of Campbell vs. Hiller, no complicated, abstruse, or difficult questions were presented. There was only

one question of fact: whether the defendant had made false representations concerning the extent and quality of the lands sold by him; and only one question of law: whether those representations, if made, gave rise to a cause of action, the false representations referring to a condition which was apparent and governed by principles of general law enunciated in our Civil Code in Articles 1847 (1841) and 2521 (2497).

2nd. The quantity of the service consisted in filing and arguing an exception of no cause of action, writing a brief of four pages in support of its and quoting four authorities; filing a rule to dissolve the injunction on the same grounds, filing an answer, crossing five commissions to take testimony with practically the same questions; applying for a commission to take the testimony of a witness for the defendant; examining the defendant himself as a witness on the trial of the case and arguing the case; the trial having consumed only a few hours, and writing a brief of two pages on the merits.

None of these services required the exercise of more than ordinary talent learning and experience as a lawyer, nor occupied any length of time, nor much physical exertion.

3rd. The value of the subject matter was apparently of the value of $4168. But in reality the notes of $3168 were not worth par. The evidence is that Campbell settled the note for $750. The judgment of $449.93 against Campbell was worthless as he was "judgment proof". So that the subject matter was really $1750 and not $4168.

Although Campbell's lawyer, the only witness as to value, testified that the services of Hiller's lawyer were worth $500, he testified that he sent a bill to his client for $250, which was never paid. There is no reason why the services of Hiller's attorney should be worth more than those of Campbell. It is true that Campbell lost his case, but the value of an attorney's fees are not tested by success or failure, but by the intrinsic worth of his services. Spring vs. Beaman ___ La. 64; Lacy vs. Lanaux, 19 La. Ann. 153; Lea vs. Hart, 47 La. Ann. 1125, 17 South. 593; Fenner vs. McCann, 49 La. Ann. 600, 21 South. 768; 4 Cyc. 983.

In the case of Bellington vs. Pointevent, 52 La. Ann. 1397, 27 South. 725, for dissolving an attachment for $2224.70 after appeal to the Supreme Court, the court allowed $200 fees.

We conclude, therefore, that the amount allowed by the trial court is excessive.

It is therefore ordered that the amount of the judgment herein be reduced from four hundred dollars to two hundred dollars with five per cent per annum interest from February 21, 1924, till paid, and that in other respects said judgment be affirmed. The costs of the District Court to be paid by the defendant, and the costs of appeal by the plaintiff.